Narine Mkrtchyan (243269)
MKRTCHYAN LAW
P.O. Box 2288
Toluca Lake, CA 91610
Tel.  (818) 388-7022
E-mail: narine57@gmail.com

Attorney for Plaintiff LisaMarie Rayzberg

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISAMARIE RAYZBERG,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>LOS ANGELES COUNTY, et al.,<br><br>　　　　Defendants. | No 2:23-cv-02585-DMG-JC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY RESPONSES BY DEFENDANT LOS ANGELES COUNTY**<br><br>**DCO: February 14, 2024**<br>**Hearing: January 2, 2024**<br>**Time: 9:30 am**<br>**Courtroom: 750** |

PLEASE TAKE NOTICE THAT on January 2, 2024, at the hour of 9:30 a.m. or as soon thereafter as Counsel may be heard in Courtroom "750" of the above referenced Court located at 255 E. Temple Street, Los Angeles, CA 90012, Plaintiff will and does hereby move this Court for an Order overruling defendants' objections to discovery and compelling complete responses to Plaintiff's Requests for Production of Records as set forth in the appended Motion.

In addition, Plaintiff seeks an award of monetary sanctions in accordance with FRCP 37(a) and Local Rule 37-4 by reason of defense counsel's boilerplate objections, delays in discovery and refusal to cooperate under Local Rule 37 meet and conference of counsel and preparation of the joint stipulation.

Said motion is based on this Notice, the records, papers and files in this case, as well as such oral and documentary evidence as may be produced at the hearing on the Motion.

DATED: December 5, 2023                **MKRTCHYAN LAW**


By /s/_____

Narine Mkrtchyan
    Attorney for Plaintiff
    Lisamarie Rayzberg

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES……………………………………………………..5

PLAINTIFF'S INTRODUCTORY STATEMENT……………………….…..….. 10

DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR DOCUMENTS
      AND THINGS TO BE PRODUCED (NOS. 3,4, 10,13, 14, 15, and
      24)……………………………………………………….………13


      REQUEST FOR PRODUCTION NO. 3…………………………..…….13
      RESPONSE TO REQUEST NO. 3………………………………….…...13

      REQUEST FOR PRODUCTION NO. 4…………………………...……14
      RESPONSE TO REQUEST NO. 4……………………………………14

      REQUEST NO.10……………………………………….…………14
      RESPONSE TO REQUEST NO. 10………………………………..…15

      REQUEST NO.13…………………………………………………….…15
      RESPONSE TO REQUEST NO. 13……………………………….…...15

      REQUEST NO.14……………………………………………………….15
      RESPONSE TO REQUEST NO. 14……………………………………..16

      REQUEST NO.15……………………………………………….…16
      RESPONSE TO REQUEST NO. 15………………………………..16

      REQUEST NO.24…………………………………...…………..…16
      RESPONSE TO REQUEST NO. 24……………..……………………...17

1

PLAINTIFF'S CONTENTIONS WITH RESPECT TO DEMANDS FOR
PRODUCTION OF RECORDS TO COUNTY…………...…………………17

2

3

4

MEMORANDUM OF POINTS AND
AUTHORITIES……………………………………………………...…20

5

6

PLAINTIFF'S CONTENTIONS REGARDING MONETARY SANCTIONS…..32

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**FEDERAL AUTHORITIES**

Davis v. Fendler,
(9th Cir. 1981) 650 F.2d. 1154, 1160................................................20

Chism v. County of San Bernardino
(C.D. Cal. 1994) 159 F.R.D........................................................ 21

Guerra v. Board of Trustees,
(9th Cir. 1977) 567 F.2d 352......................................................21

Taylor v. Los Angeles Police Department,
(C.D. Cal. 1999) 1999 WL 33101661 at *4…………………………………...21

Kerr v. United States Dist. Court for North. Dist.,
(9th Cir. 1975) 511 F.2d 192, 197…………………………….........21, 25

Garrett v. City and County of San Francisco,
(9th Cir. 1987) 818 F.2d 1515, 1519 fn. 6..........................................2, 22, 25

Ceramic Corp. of America v. Inka Maritime Corp.,
(C.D. Cal. 1995) 163 F.R.D. 584, 589 ........................................... 21

Hampton v. City of San Diego
(S.D. Cal. 1993) 147 F.R.D. 227 ........................................21, 22

Skibo,
(E.D.N.Y. 1985)109 F.R.D. at 62..................................................22

King v. Conde,
(E.D.N.Y. 1988) 121 F.R.D. 180, 187...........................................22, 23

Kelly v. City of San Jose,

(N.D. Cal. 1987) 114 F.R.D. 653, 655-56…………………………….........22

Soto v. Concord,
(N.D. Cal 1995)162 F.R.D. 603…………..…………………...............22, 25

Frankenhauser v. Rizzo,
(E.D. Pa. 1973)59 F.R.D. 339…...................................................................22

Howe v. Detroit Free Press,
440 Mich. 203, 223 (1992)..........................................................................22

Scouler v. Craig,
(D.N.J. 1987)116 F.R.D. 494, 496…………………………………….…..22

Youngblood v. Gates,
(C.D. Cal 1985) 112 F.R.D. 342, 344……………………………….........25

Miller v. Panucci,
(C.D. Cal 1992)141 F.R.D. 292……………………………..……….…..24

Mueller v. Walker,
(D. Or. 1989) 124 F.R.D. 654, 659………………………………….........25

City of Portland v. Rice,
(1989)308 Or. 118, 775 P.2d 1371…………………………………….…...25

Acierno v. Haggerty
(Del. Super. Ct. Sept. 2003) 2005 WL 3134060…………………………...25

Marbet v. City of Portland
(D. Or. 2003) 2003 WL 23540258…………………………………….……25

Brown v. State of Oregon, Dept. Corr.,
(D. Or. 1997)173 F.R.D. 262, 264…………………………….........25, 26

Sanchez v. City of Santa Ana,
(9th Cir. 1990) 936 F.2d 1027, 10333.........................................................25

1

2      United States v. Hankey
3          (9th Cir. 2000) 203 F.3d 1160. 1171……………........................................26, 31

4      United States v. Jackson
5          (5th Cir. 1979) 588 F.2d 1046, 1055……………………………..…..26, 31

6      U.S. v. Geston,
7          (9th Cir. 2002) 299 F.3d 1130, 1137………………………………….……27

8      United States v. Gay,
9          (9th Cir. 1992) 967 F.2d 322, 327-28…….....................................................27

10

11     Tallacus v. Sebelius,
12         2010 U.S. Dist. LEXIS 37649 *10………………………………………….27

13     U.S. v. Cortez,
14         (8th Cir. 1991) 935 F.2d 135, 139…………………………….……..........27

15     U.S. v. Turning Bear,
16         (8th Cir. 2004) 357 F.3d 730, 734……………………………….….........27

17

18     United States v. McMurray
19         (8th Cir. 1994) 20 F.3d 831, 834........................................................................27

20     Thompson v. City of Los Angeles,
21         (9th Cir. 1989)   885 F.2d 1439, 144..................................................................28

22     Bryant v. Maffucci
23         (2d Cir. 1991) 923 F.2d 979, 986......................................................................28

24

25     Rodriguez v. Avita,
26         (5th Cir. 1989) 871 F.2d 552, 554-555…………………………….............28

27     Williams v. City of Albany,
28         (M.D. Ga. 1900) 738 F.Supp. 499, 502..............................................................28

Larez v. City of Los Angeles,
    (9th Cir. 1991) 946 F.2d 630, 645...................................................................29

Henry v. County of Shasta
    (9th Cir. 1997) 132 F3d 512, 519..................................................................29

Pope v. Henry,
    (1998) 525 U.S. 819, 119 S. Ct. 59, 142 L. Ed. 2d 46, 1998 U.S. LEXIS
4879………………………………………………………………………………..29

Pembaur v. City of Cincinnati,
    (1986) 475 U.S. 469…………………………………………………….......29

Clouthier v. County of Contra Costa,
    (9th Cir.) 591 F.3d 1232, 1249–50…………………………………….........29

Watkins v. City of Oakland, Cal.,
    (9th Cir. 1998)145 F.3d 1087, 1093 (9th Cir. 1998).....................................29

Canton v. Harris,
    (1989) 489 U.S. 378.......................................................................................29

Crowe v. Bolduc
    (1st Cir. 2003)334 F.3d 124, 132…………………………………….........31

Osborne v. United States,
    (8th Cir. 1976) 542 F.2d 1015…………………………………….......31

Steinmark v. Parratt
    (D.C.Neb. 1977) 427 F.Supp. 931, 936 -940………………………….........31

U.S. v. Reid,
    (9th Cir. 1980) 634 F.2d 469, 473…………………………..……………….31

Lyda v. United States,
    (9th Cir. 1963) 321 F.2d 788……………………………………….......31

U.S. v. Bararic
(2d Cir. 1983)706 F.2d 42, 66……………………………………….......31

**CALIFORNIA AUTHORITIES**
Welsh v. City of San Francisco,
(N.D. Cal. 1995) 887 F. Supp. 1293, 1299………………….…….......21

Ramirez v. County of Los Angeles, slip op.,
(2005) C.D. Calif. NO. CV 04-6102……………….....……...…..20, 22

**FEDERAL STATUTES**
Fed. Rule Civ. Proc. 26 (b)(1)........................................................................20

Fed. Rule Evid. 608………………………………………….….26, 27, 31

Fed. Rule Evid. 405…………………………………………….……27

Fed. Rule Evid. 701…………………………………………….……27

42 U.S. Code § 1983……………………………………….…..24, 28

Fed. R. Evid. 608(b)(1).........................................................................31

Fed. Rule Civ. Proc. 37(a)(4).........................................................................31

Fed. R. Civ. P. 37(a)(3)..........................................................................32

**CALIFORNIA STAUTES CODES**
California Government Code Section 832.5 et seq. R .................................. 29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PLAINTIFF'S INTRODUCTORY STATEMENT

On May 15, 2021, Plaintiff Lisamarie Rayzberg was seated in her own car in the parking lot of her apartment complex when she was detained, arrested and injured by Defendant Deputy Scott Reynal. The deputy suddenly approached her and without any introduction started making accusations about her car being stolen. Taken aback by this rude manner and demeanor, Plaintiff inquired what was going on, as it was her right. Instead, she was rudely ordered out of her car, handcuffed, detained, placed in the patrol vehicle in an uncomfortable position without any explanation. During handcuffing the deputy maliciously twisted her arm and shoulder, causing a shoulder tear. She complained to no avail and demanded a supervisor. Her husband came out from home, inquiring what happened and was also placed in handcuffs and detained. As the supervisor Sgt Saucedo arrived later on, Plaintiff was still not released and continued to be under a detention for over an hour, which amounted to a false arrest without probable cause. Deputy Martinez who also showed up, failed to intervene and take any action in releasing Rayzberg. Her car had a distinctly visible business logo sticker, did not match the car reported stolen in the City of Montebello, was registered to her, which was verified by the deputies through the vehicle identification number. Defendants, however, kept her detained beyond the time necessary to determine if her car matched the stolen vehicle.

As Plaintiff was finally being released, she complained of pain to her right arm and shoulder and asked for medical care. She also asked for the names of the officers involved in her detention. Distraught and in pain, she went to the Sheriff's Department station and filed a complaint, was told she would be contacted about medical care. Thereafter, she was interviewed about the incident, but was not provided a disposition with the results. She was never offered any medical care.

Plaintiff checked herself in at the hospital where she was documented with a shoulder tear and began a long arduous treatment for injuries that have not healed

to date, causing her a great deal of pain and suffering. This suit followed alleging violation of federal civil rights and Monell liability against County for fostering a policy, custom and practice of turning a blind eye to their officers' misconduct.

Discovery commenced when Plaintiff first served its first set of document requests, subject of this motion, on May 9, 2023 only to receive boilerplate objections with Initial Disclosures not responsive to requests, and incomplete. Plaintiff then sent the first Rule 37 meet and confer letter requesting a pre-motion conference on June 15, 2023. See attached as **Exhibit A**. In a characteristic pattern the defense counsel delayed meeting, did not log on the Zoom meeting, until June 30. At this telephonic conversation Plaintiff discussed the discovery and the requests sought, agreed to narrow some requests in exchange for defendants producing records with a protective order. Defense counsel promised to confirm with his clients and get back to Plaintiff by July 13, 2023. See **Exhibit B**. Thereafter, defense counsel delayed responding to Plaintiff with confirmation until August 7, 2023. Plaintiff agreed to receiving personnel files of defendant officers with a protective order. See **Exhibit C**. The defendants did not propose a protective order approved by Magistrate until September and their first proposed stipulation was stricken by the Court. See **Doc. 19, 20.** After multiple back and forths over two months and struggle in preparation of an approved Protective Order,  Plaintiff received promised records related to defendant officers' personnel files on October 5, 2023. See **Exhibit D**.

After review of these records in conjunction with the Initial Disclosures, on November 17, 2023 Plaintiff has identified multiple issues with the production, and sent a second Rule 37 meet and confer letter inviting defense counsel to meet and discuss. See **Exhibit E**. The particular issues identified were as follows:

1. BWC cameras for the Plaintiff's incident were produced in separate truncated clips with gaps in recording when the policy requires the

contact to be recorded in its entirety. Plaintiff's counsel had discussed this issue with defense at the previous session in June. Therefore, Plaintiff sought the <u>audit trail logs</u> for the Exhibits B-J, and any other BWC related to Plaintiff's incident.

2. Plaintiff had previously requested in RFP No. 15 the radio transmissions for the subject incident, that have not been produced. Plaintiff agreed to narrow the scope of the request near the time of the incident to no avail. No production has been made thus far.

3. Plaintiff had previously sought all audio/video related to her citizen complaint investigation, particularly any <u>audio recorded interviews of defendants</u>, that have not been produced to Plaintiff. Since Plaintiff's interview was recorded, the policy required also the defendants to be recorded in their interviews.

4. Plaintiff had previously sought in RFP 4 the use of force investigation reports related to Plaintiff's incident. No such documents have been produced. Defendants' previous response referenced Exhibits A-O, but no use of force summary was produced there.

5. Lastly, Plaintiff had sought all digital media related to defendants' prior complaint/use of force investigations history. Plaintiff is agreeable to limiting this request only to **Deputy Scott Reynal**, who has a prolific history of use of force/complaints evident from the latest production of his personnel files in October. Plaintiff therefore, is asking for all existing audio/video and BWC related to his history of use of force/complaints produced with the Protective Order.

The only response Plaintiff received to this invitation was defense counsel providing a password for accessing the newly produced discovery. Plaintiff's

counsel followed up on November 28 and December 1 on the issues to no avail. Belatedly, the defense counsel responded on December 4 with a vague response that they were going to review and get back to Plaintiff. **Exhibit F**.

Because of this lack of response and history and pattern of delays in receiving discovery, Plaintiff requests court orders to facilitate discovery and expedited resolution of this case in light of the Discovery Cut-Off date February 14, 2024. Plaintiff is severely prejudiced by this lack of cooperation also because Plaintiff has scheduled depositions of defendants and non-party witnesses for December and January prior to DCO in February, but is impaired in conducting them without the benefit of this discovery.

## DEFENDANT COUNTY'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DOCUMENTS AND THINGS TO BE PRODUCED (NOS. 3, 4, 10, 13-15, 24)

## REQUEST FOR PRODUCTION NO. 3:

Produce exact unredacted copies of crime and arrest reports, digital media (photos, audio/video) for Cal. PC 69, PC 148(a)(1), 240, 242, 243, 245, 664/187 wherein Defendants Sergeant CLAUDIA SAUCEDO, SCOTT REYNAL, RIGOBERTO MARTINEZ and other Defendant officers, presently unknown to Plaintiff, but known to County, involved in detention, use of force, interrogation of Plaintiff, claimed to be victims or witnesses, including but not limited to, incident involving Plaintiff Rayzberg for 5 years preceding May 15, 2021 through the date of your responses.

## DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

This request is objected to on the grounds that it is vague, ambiguous, and overbroad. Additionally, the request asks about information that does not pertain to any of the issues raised in the underlying Complaint. For example, the request does not limit its request into information, which pertains to issues raised in the

Complaint. As such, the request is not reasonably calculated to lead to the discovery of admissible evidence.

However, without waiving the aforementioned objections, Defendant directs Plaintiffs attention to Defendants' June 1, 2023 Initial Disclosures. Furthermore, Defendant states that the underlying reports as well as digital media have been produced as **Exhibits A-O.**

**REQUEST FOR PRODUCTION NO. 4:**

Produce exact copies of each completed Use of Force investigation reports, or any equivalent at the Department pertaining to Defendants Sergeant CLAUDIA SAUCEDO, SCOTT REYNAL, RIGOBERTO MARTINEZ and other Defendant officers, presently unknown to Plaintiff, but known to County, involved in detention, use of force, interrogation, questioning of Plaintiff from May 15, 2021, through the date of production.

**DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

This request is objected to on the grounds that it is vague, ambiguous, and overbroad. Additionally, the request asks about information that does not pertain to any of the issues raised in the underlying Complaint. For example, the request does not limit its request into information, which pertains to issues raised in the Complaint. As such, the request is not reasonably calculated to lead to the discovery of admissible evidence.

However, without waiving the aforementioned objections, Defendant directs Plaintiffs attention to Defendants' June 1, 2023 Initial Disclosures. Therein, Defendant produced copies of the investigation reports pertaining to Defendants Sergeant CLAUDIA SAUCEDO, SCOTT REYNAL, RIGOBERTO MARTINEZ involved in detention, use of force, interrogation, questioning of Plaintiff from May 15, 2021, through the date of production. In that regard, please review **Exhibits A-O** produced by the Defendants on June 1, 2023.

**REQUEST FOR PRODUCTION NO. 10:**

All and every sergeant's, watch commander's, and/or other supervisory officer's reports/notes/memos, including Sergeant CLAUDIA SAUCEDO's report, Watch commander EDUARDO LOPEZ' report/memo, #297019, Lieutenant TAYLOR's report/memo, Captain RICHARD MEJIA's report/memo, upon which the subject incident of this lawsuit occurred, and all such reports which mention, relate to or comment on the LASD call Log History for incident(s) with Plaintiff on May 15, 2021, subsequent thereto, irrespective of the date of the report.

**DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

This request is objected to on the grounds that it is vague, ambiguous, and overbroad. Additionally, the request asks about information that does not pertain to any of the issues raised in the underlying Complaint. For example, the request does not limit its request into information, which pertains to issues raised in the Complaint. As such, the request is not reasonably calculated to lead to the discovery of admissible evidence.

Additionally, the request is compound and unintelligible.

However, without waiving the aforementioned objections, Defendant directs Plaintiffs attention to Defendants' June 1, 2023 Initial Disclosures. Furthermore, Defendant states that the underlying reports as well as digital media have been produced as **Exhibits A-O.**

**REQUEST FOR PRODUCTION NO. 13:**

Any and all audio/video recordings related to this incident, LASD Call Log History for May 15, 2021, including but not limited to, the recordings from body cameras, patrol vehicles, the surveillance camera(s) near the parking lot at 334 ViaVista, Montebello, and other recording devices in operation during the detention, arrest and contacts with Plaintiff.

**DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendant directs Plaintiffs attention to Defendants' June 1, 2023 Initial Disclosures. Therein, Defendant produced any and all audio/video recordings

related to this incident, LASD Call Log History for May 15, 2021, by way of **Exhibits A-O.**

**REQUEST FOR PRODUCTION NO. 14:**

A true, complete and audible copy of each audio taped and videotaped interview of any person connected to the incident alleged in Plaintiffs complaint and any subsequent investigation, criminal or administrative.

**DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant directs Plaintiffs attention to Defendants' June 1, 2023 Initial Disclosures. Therein, Defendant produced any and all audio/video recordings related to this incident, LASD Call Log History for May 15, 2021, by way of **Exhibits A-O.**

**REQUEST FOR PRODUCTION NO. 15:**

Any and all recorded radio transmissions communications between and among LASD officers on all recorded channels employed by individual officers on May 15, 2021, starting at 9:00 am hours and ending at 6:00 pm hours, LASD Call Log History for May 15, 2021, at 334 Via Vista, Montebello.

**DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

This request is objected to on the grounds that it is vague, ambiguous, and overbroad. Additionally, the request asks about information that does not pertain to any of the issues raised in the underlying Complaint. For example, the request does not limit its request into information, which pertains to issues raised in the Complaint. As such, the request is not reasonably calculated to lead to the discovery of admissible evidence.

By way of example, this request inquires about *all recorded channels* between the hours of 9:00 a.m. and 6:00 p.m. This request is overbroad as to all channels and the start time of 9:00 a.m. and end time of 6:00 p.m. are overbroad. This incident occurred at approximately 11:30 a.m.

**REQUEST FOR PRODUCTION NO. 24:**

A true, complete copy of each still photograph of the tattoos Officers
CLAUDIA SAUCEDO, SCOTT REYNAL, RIGOBERTO MARTINEZ have on
their body. Please note that xerox copies of photographs will not suffice. Plaintiff
will reimburse Defendants for the expense of reproducing said color photographs.

**DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

This interrogatory is objected to on the grounds that it is vague, ambiguous,
and overbroad. Additionally, Defendant objects to this request on the grounds that
the request is compound and is in contravention of Rule 33 (a) (1) of the Federal
Rules of Civil Procedure. Defendant also objects to this interrogatory on the
grounds that it calls for the disclosure of irrelevant information, and for information
not reasonably calculated to lead to the discovery of admissible evidence. The fact
that the Defendant Deputies may or may not have a tattoo is irrelevant and intrudes
into the respective deputy's right of privacy.

However, without waiving the aforementioned objections, Defendants
Reynal, Martinez and Saucedo do not have tattoos, which would identify these
Defendants as a member of a law enforcement gang or clique, subgroup, or
association.

**PLAINTIFF'S CONTENTIONS WITH RESPECT TO DEMANDS FOR**
**PRODUCTION OF RECORDS TO COUNTY**

Defendants have inserted a shotgun objection to **RFPs 3, 4, 10, 13, 14** on
grounds of relevancy, vagueness/ambiguity, overbreadth and then referenced their
Initial Disclosures when the disclosures are incomplete and not responsive to
Plaintiff's requests. For **RFPs 15-24** they simply objected and did not even attempt
to come to a resolution, despite Plaintiff's effort at meet and confer and narrowing
of issues. As early as on June 30, 2023 at the initial meet and confer conference
Plaintiff explained in detail what Plaintiff sought and relevancy of these records to
Plaintiff. Defendants' Initial and Supplemental disclosures fell short of satisfying

Plaintiff's concerns and any further attempt to resolve issues was met with lack of response and outright ignoring Plaintiff counsel's emails.

As an example, in **No. 13-15** Plaintiff sought all audio/video related to this incident and subsequent investigation. Plaintiff's contact with defendants at the scene was over an hour, while she was handcuffed and placed in patrol vehicle, as multiple defendants were investigating the crime of an alleged stolen vehicle in the area. Defendants produced BWC in separate truncated clips with clear gaps in recording when by their own policy the contact with citizen has to be recorded in its entirety. In order to determine, that defendants have not excluded or destroyed from production relevant pieces of recording from defendants, Plaintiff has asked for audit trail logs that the software maintains in the system. **Exhibit G**. After Plaintiff was released, she went to the station to file a formal complaint and was interviewed by Sergeant Eduardo Lopez who filled out a watch commander's service comment report. Her interview was recorded and produced to Plaintiff, but defendants' interviews have not been produced in audio, only the narrative rendition of their statements by the sergeant. According to policy, the Department has to conduct thorough investigation into complaints which entails recording statements. **Exhibit H**. Plaintiff is entitled to get the original recordings of these interviews to impeach credibility of these officers. Plaintiff's inability to collect these records prior to scheduled depositions of defendants impairs Plaintiff's ability to adequately depose them.

In **RFP 15** Plaintiff has sought radio transmissions related to the incident. Plaintiff narrowed the time frame near the time of the incident. Defendants have not produced such. These are relevant because defendants communicate with dispatch and among each other during the investigation of the contact, and their statements are relevant for impeachment at the time of trial.

In **RFPs 3-4** Plaintiff has sought relevant arrest and use of force reports for defendant officers. Plaintiff was injured to the shoulder causing a SLAP tear with

permanent damage during forceful handcuffing by Defendant Deputy Reynal and therefore, this is an excessive force case in addition to wrongful detention prolonged beyond the needs of investigation. After months of delays defendants have agreed to withdraw their objections and produced some reports with a protective order. However, Plaintiff's use of force investigation reports have not been produced, when Plaintiff complained about injuries on the same day to the sergeant, and by their own policy the department should have done a use of force investigation. **Exhibit I.** Nor did the defendants have produced the digital media related to prior use of force incidents for deputy defendants. In the most recent Rule 37 meet and confer invitation Plaintiff has narrowed the scope of this request to Deputy Scott Reynal, since he was the one who initially detained and used force on Plaintiff and has a prolific history of use of force and complaints (***44 reported incidents***). Because there is a reference to body worn camera recordings and audio from these reports, Plaintiff is entitled to collect those as the best evidence of use of force, particularly because some of these witnesses are out of reach to Plaintiff and difficult to track down. **Declaration of Counsel Narine Mkrtchyan**.

In **RFP 10** Plaintiff sought all supervisory reports related to Plaintiff's incident and subsequent complaint investigation. Defendants have produced only the Watch Commander's Service Comment Report related to Plaintiff's initial complaint documentation. But as identified above, there are no use of force investigative reports, nor audio taped interviews of defendants that are conducted by the Internal Affairs by policy. Plaintiff believes either the Department did not follow their own policy in investigating Plaintiff's complaint to the fullest, as it has been their custom of turning a blind eye to citizen complaints, or are withholding it from this litigation, not to shed more light to the checkered history of Deputy Scott Reynal, whose history of complaints/use of force incidents has been ignored by the Department that promoted him to sergeant regardless. Indeed, the Watch Commander's Service Comment Report for Plaintiff's complaint states merely that

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

'Employee's conduct could have been better', without imposing any discipline on Defendant Reynal for his actions against Plaintiff that have permanently damaged her right arm and have caused so much pain and suffering in her life.

In **RFP 24** Plaintiff sought records of physical tattoos on the defendants, because Plaintiff is informed of well-documented gangs within the LASD, especially at the East LA station, where these defendants were working at the time. Physical tattoos are a prevalent way of demonstrating allegiance with gangs and unless Plaintiff gets pictures of the tattoos defendants have, their denials of any gang related tattoos mean nothing. Involvement in gangs fosters unlawful conduct and excessive force by these deputies in citizen contacts.

From the inception of these Requests for Production, Plaintiff agreed to receive these records with a Protective Order and worked towards obtaining an approved Protective Order on file with Court. See **Exhibits A-F.** There is no rhyme or reason why these defendants continuously evade Plaintiff's efforts in obtaining legitimate discovery to resolve this case. Now on the threshold of scheduled depositions of defendants in December, Plaintiff is prejudiced by these continuous delays and refusal to produce relevant discovery.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

All grounds for objections must be stated with specificity. *Ramirez v. County of Los Angeles*, 231 F.R.D.407,409 (C.D. Cal. 2005). See, *Davis v. Fendler*, 650 F.2d. 1154, 1160 (9th Cir. 1981). A "general objection, including overly broad, burdensome or oppressive, will not alone constitute a successful objection to an interrogatory, nor will the objection fulfill the objecting party's burden to explain its objections." *Id*. (Internal citation omitted)

For starters, federal rules permit broad discovery even with the advent of a proportionality factor. Even if discovery may not lead to admissible evidence, it is subject to disclosure. *Rule 26 (b)(1)* has been recently amended to cover "[A]ny

nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

Because Plaintiff's claims revolve around police misconduct and County indifference to such, Plaintiff is entitled to gather relevant files related to her incident and the personnel files from defendants to prove her claims. Because Defendants have not validly asserted privileges in their objections, necessitating a custodian's declaration with personal knowledge, required under *Chism v. County of San Bernardino,* 159 F.R.D. 531 (C.D. Cal. 1994), their withholding of highly relevant records on grounds of overbreadth, vagueness and ambiguity is meritless. Furthermore, their reference to Initial Disclosures with incomplete and unresponsive production amounts to simple gamesmanship. Any belated effort now to claim privileges by defendants should be rejected as a waiver. Absence of a valid custodian's declaration with a privilege log serves as a waiver of any privileges asserted.

The Ninth Circuit "has held that personnel files are discoverable in federal question cases . . . despite claims of privilege. *Guerra v. Board of Trustees*, 567 F.2d 352 (9th Cir. 1977); *Kerr*, 511 F.2d at 197, *aff'd*, 426 U.S. 394, 48 L. Ed. 2d 725, 96 S. Ct. 2119 (1976)." *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1519 fn. 6 (9th Cir. 1987). The courts in general have long held that the personnel files of individual defendant police officers are broadly discoverable. Thus, "[i]n recent years, the courts have routinely ordered the production of personnel files of third parties in employment discrimination and police brutality cases." *Ceramic Corp. of America v. Inka Maritime Corp*., 163 F.R.D. 584, 589

(C.D. Cal. 1995). See *Hampton*, 147 F.R.D. at 229 (police hiring documents are relevant to issues of credulity, notice to the employer, ratification by the employer, and motive of the officer). See also *Taylor v. Los Angeles Police Department*, 1999 WL 33101661 at *4 (C.D. Cal. 1999) ("Complaints against officers . . . may show, among other things, the character or proclivity of such officers toward violent behavior or possible bias."); *Welsh v. City of San Francisco, 887 F. Supp*. 1293, 1299 (N.D. Cal. 1995) ("California statutes governing the release of police personnel files . . . do not create privacy interests on the part of individual witnesses or officers because they were not enacted to protect such interests"); *Martinez v Stockton*, 132 F.R.D. 677, 682-84 (E.D. Cal. 1990); *Segura v. Reno*, 116 F.R.D. 42 (D. Nev. 1987*); Kelly v. City of San Jose*, 114 F.R.D. 653, 655-56 (N.D. Cal. 1987); *Soto v. Concord*, 162 F.R.D. 603 (N.D. Cal. 1995); *Hampton*, at 229 (S.D. Cal. 1993); *Ramirez v. County of Los Angeles, slip op.,* C.D. Calif. NO. CV 04-6102, Aug. 15, 2005. (citing *Garrett, King v. Conde, Taylor* and other cases in support of order requiring disclosure of police personnel files and reports of all complaints against involved officers); *Skibo*, 109 F.R.D. at 62 (E.D.N.Y. 1985) (plaintiffs, alleging false arrest and excessive force, were entitled to discovery of 150 personnel files and citizen complaint files); *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988); *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973); *Howe v. Detroit Free Press, 440 Mich*. 203, 223 (1992). "[T]here can be no question of the relevancy of [police personnel files] to the allegations of the complaint, particularly where [the complaint] specifically alleges the inadequacy of the [municipality's] supervising and training of [defendant police officer]." *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987). Judge Weinstein summarized the issue of privacy with respect to police officers who are defendants in civil rights suits, "Most information requested by civil rights plaintiffs in these lawsuits deals with professional personnel records, such as prior involvement in disciplinary proceedings or citizen complaints filed against the officers. The privacy interest in this kind of

professional record is not substantial, because it is not the kind of "highly personal" information warranting constitutional safeguard. The privacy interest in nondisclosure of professional records should be especially limited in view of the role played by the police officer as a public servant who must be accountable to public review. Some requests might touch on intuitively more private domains, such as an officer's psychiatric history, but even disclosures having "some effect on individual liberty or privacy" because of their personal nature are permissible when disclosure serves important public concerns." *King v. Conde*, 121 F.R.D. 180, 191 (E.D.N.Y. 1988) (citations omitted).

Plaintiff strongly urges this Court to adopt the procedures set forth in *King*, 121 FRD at 180. In that very thoughtful and well written opinion, Judge Weinstein set forth a procedure for all discovery motions regarding police officers; personnel files to be followed within its district. First, since, as the court noted, the party seeking to invoke the privilege bears the burden of justifying its application, the court required a threshold showing from the Government that would explain reasons for non-disclosure with particularity. Second, the court required a declaration or affidavit, <u>under oath and penalty of perjury</u>, from some responsible official within the agency who has personal knowledge of the records, how they had been generated or collected, what within those records have been kept confidential, and what specific interests would be injured if disclosed. Thereafter, the Court suggested that the parties themselves must attempt to agree on a cooperative resolution of the matter. The Court further noted that: "Lawfulness of police operations is a matter of great concern to citizens in a democracy and protective orders must not be granted without that public interest in mind. The parties in the court should consider carefully the benefits and costs of a properly designed protective order. 'Routinely' issuing protective orders [citation omitted] will not necessarily promote justice or the proper balance of interests; in particular cases, the court may find them an effective way to permit discovery without undermining law

enforcement." *King*, at 190. The Court further noted, for example, that home addresses and the like could easily be redacted from the materials that are provided. The Court went on to balance various factors disfavoring disclosure against factors that favor disclosure. With regard to the claim that discovery might "chill" the candor of police internal investigations, the Court noted that, "This argument is probably often overstated, and courts should be wary of relying on it in restricting discovery. First, the possibility of disclosure to civil rights plaintiffs is probably not of great import to the officers at the time they file their reports. *** An officers' incentive to hide a friend's misconduct or to be scrupulously forthcoming less he be disciplined for having concealed information, are probably much more closely tied to the internal investigative machinery than the fear of civil rights litigation." *King*, at 192. The Court went on to note that not only is there no empirical evidence to support the claim that such disclosure would "chill" candor, but that if the fear of disclosure in civil rights lawsuits does have some real effect, "... [t]he stronger working hypothesis is that fear of disclosure is more likely to increase candor than to chill it." *Id.* With respect to information in various records, the court suggested that, "Courts should not expend too much effort trying to distinguish "factual" from 'evaluative' information in these decisions. This distinction is likely to be quite elusive and often arbitrary. [citation omitted]. Rather, court should examine specific objections to specific pieces of information in each case, applying a balancing test." *Id*. at 193. In balancing the factors favoring disclosure, the court noted that relevance, the importance to the plaintiff's case, and the strength of the plaintiff's case are factors worth noting. However, because discovery is a broader scope than admissibility and may be on inadmissible matters, and because material sought is in the possession of the defendant, the court should not require plaintiffs to prove relevance or that the information is unavailable elsewhere. Instead, the court should err "on the side of wider discovery". *Id*. at 195. In determining the various factors, the court noted that, "The great weight of the policy in favor of discovery in civil

rights actions supplements the normal presumption in favor of broad discovery, discussed above. Together, these powerful public policies suggest that the defendants' case for restricted disclosure must be extremely persuasive." *Id*. In *Miller*, 141 F.R.D. 292, plaintiff alleged a § 1983 claim for excessive force with various other claims alleging policy, pattern or practice liability under *Monell*. Plaintiff served a Demand for Production of Documents seeking a number of items including personnel and psychological records. As it related to personnel records, the court concluded (at 297-98) that the Ninth Circuit has required discovery of personnel files, despite claims of state-created privileges," citing *Garrett; Youngblood v. Gates,* 112 F.R.D. 342, 344 (C.D. Cal 1985); *and Kerr v. United States Dist. Court for North. Dist*., 511 F.2d 192, 197 (9th Cir. 1975). Even "[r]elevant psychological testing results pertaining to the incident at issue or relating to prior violent episode" are discoverable. *Mueller v. Walker*, 124 F.R.D. 654, 659 (D. Or. 1989). See also *Soto*, 162 F.R.D. at 614-23 (ordering disclosure of not only all personnel records of the officers involved but further ordering that psychiatric, psychological, and physical health records of the officers be produced for in camera inspection). *City of Portland v. Rice*, 308 Or. 118, 775 P.2d 1371 (1989) -- police disciplinary records are not exempt from discovery. *Haggerty* Sept. 2003 decision on scope of discovery in police excessive force case - *Marbet v. City of Portland* -- no govt privilege ("official info") for "after reports" - Must disclose independent review; internal affairs disclosable (limited) [employment case - *Brown v. State of Oregon, Dept. Corr.,* 173 F.R.D. 262, 264 (D. Or. 1997) (granting the plaintiff's motion to compel over objections raised by the government that the personnel information was protected by the official information privilege). The Brown court went on to acknowledge that there is a qualified privilege for official information in the federal common law. *Id*. at 264. Judge Frye determined that this qualified privilege could be asserted regarding governmental personnel files, but recognized that the privilege can only be maintained "if the potential disadvantages

of disclosure outweigh the potential benefits of disclosure." *Id.* at 264 (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 10333 (9th Cir. 1990), as amended, cert. denied, 502 U.S. 957 (1991)). In weighing the issue of disclosure and non-disclosure of the information sought by Brown, Judge Frye ultimately held, "Because the positions of sergeant are apparently filled from a pool of applicants within the Department of Corrections, information in the personnel file of an applicant is considered when making a promotion decision. Brown needs access to this information to reasonably prosecute his discrimination action. In addition, there is the public interest in halting discriminatory conduct, if any, within a public agency. The privacy concerns raised by the defendants are legitimate concerns, but they can be protected by a carefully crafted protective order. The court concludes that the benefits of disclosing the merit rating reports outweigh the disadvantages of disclosure. The defendants must produce these reports, subject to a protective order." *Id.* at 264. Judge Frye also went on to grant plaintiff's request for personnel files for successful applicants for the position of sergeant, subject to a protective order, for the same reason that she granted the plaintiff's request regarding Merit reviews. *Id.* at 264-265.

In this case, Plaintiff has specified in detail and has explored at the June conference with counsel the records sought and why they are relevant. It goes without saying this case revolves around police officers' credibility and any audio/video recordings related to Plaintiff's incident are critical to Plaintiff. All requests are geared towards gathering relevant evidence in impeaching credibility of these officers for prolonged detention, arrest and use of force Plaintiff causing injuries. There is no reason why the BWC videos are produced not in their original format with no explanation why there are gaps. The only way to know for sure is to review the audit trail logs maintained in the software. No reason why Plaintiff's audio recorded interview is produced, but not those of defendants who were interviewed. No legitimate reason to withhold radio transmissions related to

incident on the excuse of overbreadth, when Plaintiff specifically narrowed the original request near the time of incident.

Evidence bearing on witnesses' credibility is relevant because the witnesses' truthfulness and candor are at issue in the case. See *United States v. Hankey* 203 F.3d 1160. 1171 (9th Cir. 2000); *United States v. Jackson* 588 F.2d 1046, 1055 (5th Cir. 1979) ("Where an accused takes the stand as a witness, he places his credibility in issue as does any other witness."). Officers' character trait for dishonesty is discoverable because it is admissible. *U.S. v. Geston,* 299 F.3d 1130, 1137 (9th Cir. 2002) Specific bad act evidence is admissible under Rule 608 (b) "for the purpose of attacking or supporting the witness credibility" if it is probative of the "witness' character for truthfulness or untruthfulness" or "challenges a witness's credibility." See *United States v. Gay*, 967 F.2d 322, 327-28 (9th Cir. 1992).

**Requests No. 3-4** objected to leads Plaintiff's counsel to persons who will be qualified to opine individual defendants are not to be trusted in what they say. FRE 608, FRE 405. *Tallacus v. Sebelius*, 2010 U.S. Dist. LEXIS 37649 *10.

FRE 405 concerns methods of proof for establishing a person's character. It states, in relevant part: "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion."

Witnesses derived from these records are qualified to render their lay opinions in accordance with Rule 701 as to Defendants' character for untruthfulness. *U.S. v. Cortez*, 935 F.2d 135, 139 (8th Cir. 1991) "Admissibility of opinion testimony by lay witnesses is further limited by Rule 701, which requires that the testimony be based on first-hand knowledge and be helpful to resolving a fact in issue." Plaintiffs expect them to be direct victims of the defendant officer's mendacity. *U.S. v. Turning Bear*, 357 F.3d 730, 734 (8th Cir. 2004). "An adequate foundation must be laid in order for opinion testimony concerning another

witness's character for untruthfulness to be admissible. Such a foundation is laid by demonstrating that the opinion witness knows the relevant witness well enough to have formed an opinion."

In *United States v. McMurray* 20 F.3d 831, 834 (8th Cir. 1994) the court held it was proper to admit the opinion testimony of a witness who had but one contact with the defendant evincing untruthful character. These are the potential trial witnesses these RFP responses will result.

These requests will also lead to witnesses to prove the *Monell* claims by Plaintiff. These over breadth objections are fatuous efforts to suppress proof essential to the successful adducing of *Monell* policy and practice evidence. On the one hand LASD presents the self-serving argument that the discovery of an officer's citizen complaints is over broad while at the same time will be seeking summary judgment with the argument that the plaintiff lacks evidence supporting the broad *Monell* claim. Indeed in their RFPs and Interrogatories to Plaintiff, the County has demanded Plaintiff to identify records in support of her claims of failure to investigate and failure to supervise these defendants.

"[C]ourts have repeatedly required Section 1983 plaintiffs to support their 'custom' allegations with multiple, similar past incidents– thereby demonstrating official knowledge and tacit approval of an unconstitutional course of conduct by municipal employees. *See, Thompson v. City of Los Angeles*, 885 F.2d 1439, 144 (9th Cir. 1989) (Dismissing *Monell* 'custom' allegation where plaintiff fails to produce evidence of 'widespread abuses and practices. . .[which] are so pervasive as to have the force of law'); *Bryant v. Maffucci*, 923 F.2d 979, 986 (2d Cir. 1991) ('In order to sustain [a section 1983 government 'custom'] claim, more must be shown than a single incident in which a plaintiff was denied a constitutional right'); *Rodriguez v. Avita*, 871 F.2d 552, 554-555 (5th Cir. 1989)('[A] single shooting incident by a police officer [is] insufficient as a matter of law to establish the official policy requisite to municipal liability under Section 1983.'(emphasis

added); *Williams v. City of Albany*, 738 F.Supp. 499, 502 (M.D. Ga. 1900) ('Municipal liability will not be found to exist under a theory of respondent superior in a Section 1983 action. Nor can official municipal policy be established by proof of the occurrence of a single incident of unconstitutional activity.') LASD cannot on the one hand argue over breadth objections to discovery in good faith at the same time argue the *Monell* claim fails because Plaintiffs lack the proof. Even post-incident records have been found relevant and admissible at trial against the County Defendant, "…we reiterate our rule that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry. See, e.g., *Larez v. City of Los Angeles,* 946 F.2d 630, 645 (9th Cir. 1991). When a county continues to turn a blind eye to severe violations of inmates' constitutional rights - despite having received notice of such violations - a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference." *Henry v. County of Shasta* 132 F3d 512, 519 (9th Cir. 1997) cert denied *Pope v. Henry*, 525 U.S. 819, 119 S. Ct. 59, 142 L. Ed. 2d 46, 1998 U.S. LEXIS 4879(1998). Thus Plaintiff's requests are sought to prove the *Monell* claims of the overarching custom, policy, and practice at the LASD of covering-up the misconduct of their employees. A municipality and its official policy-makers can be held responsible under the *Monell* for violation of federally protected rights based on a single decision pursuant to official policy making authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir.); *see also Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998) (police chief liable for ratifying the use of excessive force by officers under his command by signing letter denying plaintiff's complaint when expert testimony showed that he should have disciplined the officers and established new police procedures). County can be held liable for inaction and failure to train its officers. *Canton v. Harris,* 489 U.S. 378 (1989). Failure to take

proper remedial action or discipline officers after misconduct is actionable as acquiescence. *Henry v. County of Shasta*, 132 F.3d 512 (9th Cir. 1997)

For the same reasons, the supervisory reports in **RFP 10** sought by Plaintiff are necessary to prove the County has turned a blind eye to Plaintiff's incident, did not adequately investigate it and whitewashed the deputies' misconduct by a vague disposition, 'Employee conduct could have been better' with no real discipline imposed. There is absolutely nothing from this disposition that prevented defendant Reynal to continue the same behavior. From his history of use of force incidents and complaint history, he has been a subject of approximately 21 reportable use of force incidents and 23 complaints that were investigated, with no real discipline. If the Department is violating their own policies and California Penal Code 832.5 et seq. requiring them to properly document and investigate citizen complaints, as the evidence here suggests, that is the best proof of ratification and failure to supervise under *Monell* claims by Plaintiff.

Reports Plaintiff received responsive to **RFPs 3-4** reference digital media, audio/video/photos. Plaintiff is entitled to collect them as the best evidence, because the reports by officers and their supervisors are self-serving, just like it was done in Plaintiff's complaint. Also because contacting the witnesses and victims, prior complainants is a difficult and expensive task, given their location and contact information is no longer updated. **Declaration of Counsel Narine Mkrtchyan**.

As to **RFP 24**, related to proof of any physical tattoos, there is well-documented evidence that there are LASD gangs and cliques within the Department, prohibited by their own policy. Deputies have various physical tattoos on their bodies. **Exhibit J**. See  OIG - Publications - Sheriff's Department (lacounty.gov)  50 years of deputy gangs in the Los Angeles County Sheriff's Department; CJLP_Report_LASD_Deputy_Gangs_012021.pdf | Powered by Box. There has been causal link between these criminal groups and misconduct by deputies within the ranks of LASD. Evidence of gang involvement also impeaches

credibility of these officers in their justification for use of force and prolonged detention against Plaintiff. The denials of gang membership without documentary proof of any physical tattoos amounts to nothing. "A Times review found more than $7 million in county payouts over the last decade in lawsuits claiming excessive force by deputies known to have matching tattoos as well as to settle a case alleging harassment by an inked deputy gang. Of that amount, $5.5 million was paid out in the last two years." L.A. County Sheriff's Department pays price as clandestine deputy cliques persist - Los Angeles Times (latimes.com)

Evidence bearing on a witness' credibility is usually relevant because the witnesses' truthfulness and candor are at issue in the case. See *United States v. Hankey* 203 F.3d 1160, 1171 (9th Cir. 2000); *United States v. Jackson* 588 F.2d 1046, 1055 (5 Cir. 1979) (witnesses who take the stand put their character for truthfulness in issue; *Crowe v. Bolduc* 334 F.3d 124, 132 (1st Cir. 2003). The character traits made inadmissible by FRE 404(a) relates to character traits *other than* dishonesty. "The courts have long recognized that testimony regarding the reputation for truth and veracity in a community of a witness is relevant and, therefore, admissible. *Osborne v. United States*, 542 F.2d 1015 (8th Cir. 1976). See also Fed. R. Evid. 608; Neb. Rev. Stat. s 27-608 (Reissue 1975); McCormick, Evidence s 44 (2d Ed. 1972). The trial court erred in excluding the proffered testimony and the error was highly prejudicial." *Steinmark v. Parratt* 427 F.Supp. 931, 936 -940 (D.C.Neb. 1977).

The Ninth Circuit has held that a specific past instance of a witness having lied to a governmental agency is admissible. *U.S. v. Reid*, 634 F.2d 469, 473 (9th Cir. 1980), *cert. denied* 102 S. Ct. 123, 454 U.S. 829, 70 L.Ed.2d 105. In *Reid*, a mail fraud case, the Court held it was proper to allow the prosecution to question the defendant about false statements he had made in a letter to a governmental agency eight years earlier. The Court stated, "[a]ppellant placed his credibility in issue when he took the witness stand. Cross-examination concerning the false

statements in the letter was entirely proper to impeach appellant's general credibility. Fed. R. Evid. 608(b)(1) gives the trial court discretion to permit cross-examination of a witness regarding specific instances of conduct concerning that witness's character for truthfulness or untruthfulness." *Id.* See also *Lyda v. United States*, 321 F.2d 788 (9th Cir. 1963). The fact that the other victims' arrests did not result in the defendant's criminal conviction is irrelevant to the admissibility of the extrinsic dishonest event that bears on the witness' credibility. *U.S. v. Bararic* 706 F.2d 42, 66 (2d Cir. 1983).

## PLAINTIFF'S CONTENTIONS REGARDING MONETARY SANCTIONS

*Fed. Rule Civ. Proc*. 37(a)(4) provides that the party who prevails on a motion to compel is entitled to his or her expenses, including reasonable attorney's fees, unless the losing party was substantially justified in making or opposing the motion. Defendants' "objections" are thoughtless and boilerplate, without any genuine consideration for whether any objection buried in the cut and paste tone reasonably applied to the discovery requests. Not a single one of the defense objections presented in this motion was justified, let alone substantially justified. These identical discovery objections have been rejected so many times in the past; there can be no valid excuse for forcing the court's intervention and wasting plaintiff's counsel's time and energy. Plaintiff agreed to accept this discovery under an agreed protective order from the outset to expedite the discovery process.

From the beginning, the Defendants' goal in this case has been to stall and delay discovery. Plaintiff has been patiently waiting for the same discovery production after the initial Rule 37 conference of counsel on June 30. Thereafter, it took four months for Plaintiff, not until October 5, 2023, to get supplemental discovery, even after Plaintiff initially agreed to receive them with a Protective Order. Plaintiff was then delayed access to review of files because the passcode was not provided. When Plaintiff sent a second invitation under Rule 37 on November 17, seeking resolution of issues, defense counsel simply ignored and

failed to meet and confer, indicating continued refusal to comply with Local Rules or their discovery obligations.

The Defendants' only objective has been to burn time, delay production and obstruct Plaintiff's discovery efforts. The refusal to withdraw is an open invitation to sanctions. The Court should respond accordingly.

Plaintiff is seeking monetary sanctions against the defense counsel for this feet-dragging, slow response, and not withdrawing their objections despite all efforts by Plaintiff's counsel to the contrary. They are responsible for the procrastination and unnecessary expenditure of time and effort to combat the unjustified refusal to comply with legitimate discovery. "For the purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer or respond." *Fed. R. Civ. P. 37(a)(3).*

Subdivision 4(A) of FRCP 37 provides the authorization to the court to impose sanctions for the behaviors exhibited by the defense:

"If the motion [to compel] is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party of deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure of discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expense unjust."

DATED: December 5, 2023                    **MKRTCHYAN LAW**


By /s/_____

Narine Mkrtchyan

33

Attorney for Plaintiff
Lisamarie Rayzberg