RAYMOND J. FUENTES, Bar No. 61199
fmllp@fm-llp.com
MICHAEL BRANCONIER, Bar No. 60640
mbranconier@fm-llp.com
FUENTES & McNALLY, LLP
700 N. Central Avenue, Suite 470
Glendale, California 91203
Telephone: (818) 543-4750
Fax: (818)543-4757

Attorneys for Defendants County of Los
Angeles, Scott Reynal, Claudia Saucedo, and
Rigoberto Martinez

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISAMARIE RAYZBERG,<br><br>        Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>        Defendants. | No. 2:23-cv-02585-DMG-JC<br><br>**Honorable Dolly Gee**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION TO STRIKE DEFENDANTS' RESPONSE TO OPPOSITON TO DEFENDANTS' SUMMARY JUDGMENT MOTION AND ALTERNATIVELY, SUMMARY ADJUDICATION; AND DEFENDANTS' OPPOSITION TO PLAINTIFF'S REQUEST TO FILE A SUR-REPLY**<br><br>Summary Judgment hearing: 04/19/24<br>Trial Date:                          07/09/24<br>Pretrial Conference:           06/11/24<br>Motion Cut-Off:                  02/23/24<br>Dispositive Motion Cut-Off: 04/12/24 |

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## EX PARTE APPLICATIONS ARE FOR SOLELY
## FOR EXTRAORDINARY RELIEF

This Court's Standing Order provides that Ex Parte applications are solely for extraordinary relief and should be used with discretion.  Sanctions may be imposed for misuse of ex parte applications.  See *Mission Power Engineering Co. v. Continental Casualty Co.,* 883 F.Supp. 488 (C.D. Cal. 1995).

To justify ex parte relief, the moving party must establish: (1) that their cause of action will be irreparably prejudiced if the underlying motion is heard according to regular noticed procedures; and (2) that they are without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect. *Id.* at 492-93.

In *Horne v. Wells Fargo Bank, N.A.*, 969 F.Supp. 1203 (C.D. Cal. 2013), the district court discussed the legal standard for ex parte applications:  The "opportunities for legitimate ex parte applications are extremely limited." *In re Intermagnetics America, Inc.*, 101 B.R. 191, 193 (D.D. Cal. 1989); see also *Mission Power Engineering, supra* at 488 (stating that to be proper, an ex parte application must demonstrate that there is good cause to allow the moving party to "go to the head of the line in front of all other litigants and receive special treatment").

2

Plaintiff's Ex Parte application fails to justify ex parte relief -- Plaintiff failed to establish the elements required for relief. Plaintiff has failed to show that her cause of action will be "irreparably prejudiced" if this ex parte is not heard. Plaintiff has not shown that she is without fault in creating the crisis that requires ex parte relief. Plaintiff was well aware of the *Scott* case – that in a summary judgment motion the video evidence is viewed in the light depicted by the videos. Plaintiff was not without fault – Plaintiff did not address this standard in her Opposition. Plaintiff's strategic miscalculation not to address this issue is not excusable.

## COURT'S DISFAVOR SUR-REPLIES

A surreply, or sur-reply, is an additional reply to a motion filed after the motion has already been fully briefed. The Local rules provide for a motion, an opposition, and a reply. Neither the Local Rules nor the Federal Rules provide a right to file a surreply.

A district court may allow a surreply to be filed, but only "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Hill v. England*, 2005 WL 3031136, P. 1 (E.D. Cal. 2005.)

While courts are required to provide pro se litigants leniency, the court generally views motions for leave to file a surreply with disfavor and will not consider granting a motion seeking leave to file a surreply absent good cause. Good cause is absent in this case.

**Plaintiff's claim that she was prejudiced because she did not find it necessary to address the applicability of _Scott v Harris_ "to the issues at hand" in this case involving BWC videos is her own strategic miscalculation**.

Plaintiff's Ex Parte requests that this Court strike Defendants' reply (Response) and/or permit Plaintiff to file a sur-reply on the grounds that Defendants' Response "prejudiced" the Plaintiff,

The Ex Parte's sole claim of prejudice to Plaintiff is "because she did not find it necessary to address the applicability of this case law to the issues at hand and requests the Court to permit a sur-reply to adequately challenge its applicability to these facts." (Ex Parte, page 3, § 4.)   Plaintiff claims that the video supports her version.  Plaintiff could have addressed the _Scott_ case in her Opposition as to whether a particular version was blatantly contradicted by the videos, especially since the Ex Parte specifically argues that "defendant's version of facts" is "entirely contradicted by the video evidence." (Ex Parte, Page 4, lines 18-20.)

The case law to which Plaintiff refers is _Scott_ v. Harris, 550 U.S. 372 (2007) which is a standard analysis for District Courts when summary judgment motions involve videos which capture "material facts" in the case.  Thus, it appears that Plaintiff's decision not to specifically address the video evidence was a strategic miscalculation.

4

Defendants' Response did not involve new issues, new evidence, or new arguments.    In *Garcia v Biter*, 95 F.Supp.3d 1131 (E.D. Cal. 2016), the Court declared:

> "Here Plaintiff seeks leave to file a surreply to address "new arguments" and evidence raised by Defendants for the first time in their reply. (Do. 73.)
>
> Defendant, however, did not provide any new evidence in the reply to Plaintiff's Opposition nor did Defendants raise new issues or arguments. Rather, Defendants cited to the record, their Motion and various legal authorities and substantively addressed those new issues raised by Plaintiff in his Opposition." *Id.* at 1134.

In the instant case, at all times the "issues at hand" involve BWC videos that depict Defendants' interactions with Plaintiff.    Both sides in this case contend that the videos support their position.    Defendants continued with their analysis of the video evidence in their Response.

Plaintiff's attorney is a seasoned criminal defense/civil rights litigator and knows that *Scott v. Harris,* 550 U.S. 372 (2007) applies to motions for summary judgment which involve video evidence.  Based on *Scott*, the Court views the facts in in the light depicted in the videos.

In fact, Plaintiff's attorney represents Plaintiff M.L.H. (a minor) in *Estate of Hernandez by and through Hernandez v City of Los Angeles*, 2024 WL 1203884 (9th Cir. 2024).  In that case, Defendants brought a motion for summary judgment, Plaintiff argued the video evidence, and the court reviewed the evidence in rendering a decision.  The Court granted Defendants' motion for summary judgment.

And just three weeks ago, the Ninth Circuit (on March 21, 2024) affirmed the District Court's granting Defendants' motion for summary judgment as to all federal claims.

In *Hernandez*, Plaintiff's Opposition (by Narine Mkrtchyan) at great length cites video evidence in support of Plaintiff's version, and argues that *Scott v. Harris*

> "is inapposite here, <u>because Plaintiff's version of facts, is supported, not plainly contradicted by the video evidence</u> and a reasonable jury would conclude based entirely on video that ....." (Opposition, p. 21.)

In *Hernandez*, 2021 WL 3206042 (C.D. Cal. 2021), the District Court's lengthy Order does not mention the *Scott* case, but confirms that the Court relied on video evidence in determining the material facts:

> "Estate Plaintiffs dispute Defendants' characterization of several facts in the DSUF. (Estate Statement of Genuine Disputes, Dkt. No. 100.) Those disputes are insufficient to create a genuine issue of material fact. *See Bischoff v. Brittain*, 183 F. Supp. 3d 1080, 1084 (E.D. Cal. 2016) ("<u>The court's decision [on a summary judgment motion] relies on the evidence submitted</u> rather than how that evidence is characterized in the statements."). <u>This is particularly true when the relevant events are captured on video.</u> (foonote 2) (emphasis added).

In *Hernandez*, the Ninth Circuit's Opinion (**for Publication**) 2024 WL 1203884 (9th Cir. 2024) (dated March 21, 2024) affirms the District Court's Order granting Defendants' motion for summary judgment as to all federal claims. The Ninth Circuit clearly relied on the video evidence in rendering its Opinion:

- <u>Video footage</u> from the patrol car and from McBride's body camera <u>captured much of what then transpired.</u> (Opinion, p. 2.)

- FOOTNOTE 1:  Because no party contends these videotapes were "doctored" or "altered," or that they lack foundation, <u>we "view[] the facts in the light depicted by the videotape."</u> See *Scott v. Harris*, 550 U.S. 372, 378, 380– 81 (2007). (emphasis added) (Opinion, p. 9)

- However, to the extent that a fact is not clearly established by the videotape, we view the evidence "in the light most favorable to the nonmoving part[ies]," i.e., Plaintiffs. Id. at 380. (Opinion, p. 6.)

- **FOOTNOTE 2:  <u>M.L.H.'s assertion that Hernandez was unarmed during the latter part of the incident is thus "blatantly contradicted" by the videotape.</u> *Scott*, 550 U.S. at 380–81. (Opinion, p. 9.)**

- Applying these principles to this case, we agree with the district court that <u>the undisputed video evidence confirms that,</u> at the time McBride fired the second volley of shots, the "threat" that Hernandez posed had not yet "ended." *Plumhoff,* 572 U.S. at 777. (emphasis added) (Opinion, p. 5.)

- This case differs from *Zion a*s to each of these critical facts. <u>The video evidence in this case clearly shows that,</u> even after the fourth shot, Hernandez continuously moved in a way that gave the objective appearance of trying to get up; <u>the video evidence shows that</u> Hernandez never dropped his weapon and still had it in his hand at the end of the episode; and McBride's continued instructions to Hernandez to drop the knife confirm that she continued to believe that he was armed. (Opinion, p. 7)

<u>**Plaintiff cannot show that Defendants' Response prejudiced Plaintiff in any way.  Plaintiff knew about the *Scott* case and that District Courts review the evidence in the light as depicted in the videos. Plaintiff had an opportunity to fully make such arguments in her Opposition**</u>.

Moreover, Plaintiff's contention that the Response had new arguments/issues is unfounded.  Plaintiff's Ex Parte claims that "Plaintiff has in fact relied heavily on the BWC recordings in much detail to support her theory of the case." (Ex Parte, p. 4, lines 14-15.) Thereafter, Plaintiff asserts that "if the Court were even to rely on

*Scott's* holding, it would simply reject defendants' version of the facts as it is entirely contradicted by the video evidence.." Based on the video evidence, Defendants continue to dispute Plaintiff's claim that the videos support her version.

In response to Defendants' motion for summary judgment, Plaintiff filed a huge Opposition with over 1,000 pages of exhibits. Defendants filed a Response.

With respect to Defendants' Motion for Summary Judgment, an important part of the record is the <u>BWC videos</u> Exhibits B, C, D, E, F, G, H, and I (and photos Exhibits L and M).

In the motion for summary judgment, Defendants contend that along with their Declarations, the BWC videos show that Defendants' conduct was that of a "reasonable officer" during their interactions with Plaintiff on May 15, 2021. Such videos are highly relevant in defending Defendants against Plaintiff's spurious claims against them, as alleged with particularity in Plaintiff's Complaint.

Plaintiff's Opposition contends that the BWC videos support Plaintiff's version. However, Plaintiff's Opposition does not cite to particular video evidence to support the claims against Defendants that are alleged with particularity in Plaintiff's Complaint.

Accordingly, this necessitated that Defendants' Response set forth those material facts alleged in the "verified" Complaint, and provide a <u>description</u> as to how, and in what manner, the <u>BWC videos do not show what Plaintiff alleges in her Complaint</u>.

For example, Defendants' Response cites to the Complaint wherein it alleges

that Defendant Reynal --

> "<u>maliciously and without warning grabbed RAYZBERG's hand, pulled her
> out of her car</u> by spilling the coffee she had in her hands, and immediately
> handcuffed her by twisting, pulling and locking her arms behind her in a
> forceful manner hurting and injuring her shoulder.  <u>RAYBERG immediately
> felt pain in her shoulder and complained "You're hurting me? Why are you
> treating me this way? What is going on?"</u> (Complaint, § 7, lines 19-24,
> submitted in Responses to Interrogatories, verified by Plaintiff under penalty
> of perjury.)"

Instead, Defendants' Response describes what the **BWC footage** shows –

> Prior to handcuffing, Plaintiff was standing outside her vehicle.  Deputy
> Reynal told her not to go anywhere.  Plaintiff informed him that she was
> not being detained.  Deputy Reynal told her that she was being detained.
> Deputy Reynal requested her name and repeatedly requested her ID
> telling her he wanted to verify that it was not stolen.  Plaintiff denied
> being uncooperative because she told him that it was "her vehicle".
> Three times Deputy Reynal told Plaintiff to place her hands on the hood
> of his patrol vehicle, or he would place her in handcuffs.  Plaintiff
> wanted Deputy Reynal to SHOW her something that said it was stolen.
> Deputy Reynal stated that he did not understand why nobody's
> cooperating. Twice Deputy Reynal told Plaintiff to place her hands
> behind her back.  Deputy Reynal handcuffed Plaintiff who continued to
> say that she didn't do anything wrong.  Deputy Reynal confirmed that he
> was recording, and confirmed to Plaintiff that he had asked for her ID.
> **Exhibit B – Reynal BWC footage** blatantly contradicts "Plaintiff's
> version" -- Deputy Reynal did not grab Plaintiff out of her car, and
> Plaintiff never yelled out to Deputy Reynal that he had injured her
> during the handcuffing.

Plaintiff's Opposition claims that the BWC videos supports Plaintiff's version,

but Defendants disagree.  In Response, Defendants specifically <u>compared the</u>

<u>allegations in the Complaint to what the videos show</u>.  Defendants' Summary

Judgment Motion <u>pierced the pleadings</u> -- those portions of Plaintiff's alleged factual

account that are blatantly contradicted by the BWC videos (record) and which should be disregarded. Due to the absence of material factual disputes, the objective reasonableness of the Defendants' conduct in this case is a "pure question of law."

Plaintiff contends that that she is entitled to file a "sur-reply," alleging that the Defendants' Response includes "new arguments/issues". Instead, Defendants' Response appropriately "responds" to Plaintiff's Opposition and continues expanding on the arguments/issues set forth in Defendants' motion for summary judgment.  Both Defendants and Plaintiff argue that the video evidence supports "their" version.  In this regard, Defendants continue to argue that the BWC videos factually support Defendants' position, and contradict the claims alleged in Plaintiff's Complaint.

And quite telling is Plaintiff's revelation in her Ex Parte wherein she states: "Plaintiff has in fact relied heavily on the BWC recording in much detail to support her theory of the case..." (Ex Parte, p. 4, lines 13-15).  However, a theory is not a fact. Plaintiff's Opposition does not contain any references/arguments that the BWC videos support the verified "factual allegations" in Plaintiff's Complaint.  Likely, this is because the Complaint alleges a number of interactions between Plaintiff and the Defendants which the videos show did not occur.

With respect to her Opposition, Plaintiff had every opportunity in her Opposition to specifically cite to the BWC videos in support of the facts alleged in her Complaint.  The Opposition does not do this.  Plaintiff's Opposition does not cite

the BWC videos that blatantly contradict her version – her allegations in her Complaint.

Defendants' Response described for the court just how the video evidence blatantly contradicts Plaintiff's version. It appears that Plaintiff has found herself in a pickle, since she is requesting that the Court strike Defendants' Response. There are no reasons whatsoever to support the striking of Defendants' Response. Moreover, it appears that Plaintiff wants the Court to grant her request for a "sur-reply" so that she will have another bite at the apple to repeat and elaborate on the allegations in her Opposition that Plaintiff's version is not contradicted by the BWC videos, as Defendants' claim and the BWC videos show.

## **CONCLUSION**

Plaintiff's Ex Parte application fails to justify the relief she requests. This Court should not strike Defendants' Response and should not grant Plaintiff's request to file a Sur-Reply.

DATED: April 10, 2024                    FUENTES & McNALLY, LLP


                                         By:    */s/Raymond J. Fuentes*
                                                RAYMOND J. FUENTES
                                                Attorneys for the Defendants

## PROOF OF SERVICE

STATE OF CALIFORNIA     )
                         ) ss.
COUNTY OF LOS ANGELES )

I certify and state that I am and was, at all times herein mentioned, a resident of the County of Los Angeles, over the age of eighteen (18) years, and not a party to or interested in the within action.

On **April 4, 2024,** I served the foregoing documents entitled:

## DEFENDANTS' OPPOSITON TO PLAINTIFF'S EX PARTE APPLICATION

on the interested parties in this action by placing [ ] the original [xx] a true and correct copy thereof enclosed in sealed envelopes addressed [xx] as follows, or [ ] as stated on the attached mailing list:

### Narine Mkrtchyan
### MKRTCHYAN LAW
PO BOX 2288
Toluca Lake, CA 91610

[   ]    **By mail.** I deposited such envelope in the mail at Glendale, California, with first class postage thereon fully prepaid. I am readily familiar with the business' practice for collection and processing of correspondence for mailing. Under that practice, it is deposited with the United States Postal Service on that same day with postage fully prepaid at Glendale, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one (1) day after the date of deposit for mailing in affidavit; and/or

[ ]    **By personal service.** [ ] I delivered by hand, such envelope to the offices of the addressee with delivery time prior to 5:00 P.M. on the date specified above;

[X]    **By email transmission.** I caused such document to be transmitted to the offices of the addressee via facsimile machine, prior to 5:00 P.M. on the date specified above;

[ ]    **By overnight courier.** I deposited such envelope in a regularly maintained overnight courier parcel receptacle prior to the time listed thereon for pick-up. Hand delivery was guaranteed by the next business day;

[]    **(State)**          I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[X]    **(Federal)**      I declare that I am a citizen of the United States of America and employed in the office of a member of the bar of this court at whose direction the service was made.

Executed at Glendale, California, this **4th day of April 2024.**

*/s/ Raymond J. Fuentes*
Raymond J. Fuentes